UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TACHICA CALLAHAN,
    *Plaintiff*,

v.

CITY OF NEW HAVEN DEPARTMENT OF
HUMAN RESOURCE *et al.*,
    *Defendants*.

No. 3:18-cv-00488 (JAM)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Tachica Callahan has filed a *pro se* complaint against the City of New Haven and various City officials alleging that they discriminated against her and retaliated against her in violation of civil rights laws. Defendants now move for summary judgment on Callahan's claims. Because there is not a genuine issue of material fact that would allow a reasonable jury to decide the case in Callahan's favor, I will grant defendants' motion.

**BACKGROUND**

The following facts are taken principally from the parties' Local Rule 56(a) statements and supporting documents.[1] The facts are presented in the light most favorable to Callahan as the non-moving party.[2]

---

[1] I granted Callahan's motion to amend her Local Rule 56(a)(2) statement and rely only on her amended statement for the purpose of this ruling. *See* Doc. #56.

[2] Although Callahan denies many of the facts in defendants' statement of material facts, Callahan generally did not follow the requirement that "[e]ach statement of material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)(3). Under the Local Rules, "[f]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1" and "an order granting the motion if the motion and supporting materials show that the movant is entitled to judgment as a matter of law." D. Conn. L. Civ. R. 56(a)(3). As a self-represented litigant, Callahan received the mandatory notice that must be served on a self-represented litigant of the requirements of Fed. R. Civ. P. 56 and D. Conn. L. Civ. R. 56. *See* Doc. #47. Therefore, while I will note Callahan's disagreement with certain of defendants' material facts, I will

Callahan is an African American female.³ Callahan brings this lawsuit against the City of New Haven and four of its officials: the Tax Collector, Maurine Villani; the Manager of Human Resources and Benefits, Stephen J. Librandi; the Personnel Director, Noelia Marcano; and the Tax Office's Deputy Director, Michelle Carfora.⁴

In 2015, it became necessary to fill the Collections Service Representative position at the City's Tax Office.⁵ Before the position was posted, Villani worked with the Human Resources and Benefits Department to revise the job description because it had been 15 years since the last revision.⁶ The revised job description listed a number of requirements, including "[g]raduation from high school, preferably supplemented by courses in accounting or bookkeeping; and at least one year experience as a teller, cashier, collector or customer service representative handling large sums of money; or any equivalent combination of training and experience which provides" a variety of listed "knowledge, abilities and skills."⁷ Among the relevant knowledge, abilities, and skills in the position description are "knowledge of principles and practices of cashiering, customer service and business mathematics" and "knowledge and understanding of proper customer service techniques."⁸

---

deem those facts admitted pursuant to D. Conn. L. Civ. R. 56(a)(3) when Callahan takes issue with a material fact but fails to cite to admissible evidence to support her position.
³ Doc. #45 at 1 (¶ 1); Doc. #56-1 at 1 (¶ 1).
⁴ Doc. #45 at 1 (¶¶ 2-5). Although Callahan denies the statements regarding the defendants' positions, Doc. #56-1 at 1-3 (¶¶ 2-5), she does not provide evidence to support her denials, and she herself refers to the defendants by very similar titles in her complaint. *See* Doc. #23 at 6, 14 (¶¶ 24, 77).
⁵ Doc. #45 at 2 (¶ 7).
⁶ *Ibid.* (¶ 8).
⁷ *Ibid.* (¶ 10).
⁸ *Id*. at 2-3 (¶ 10). Callahan denies or does not respond to these facts, and instead states without support in the evidence that Marcano should not have been able to revise the job description, that she does not recall bank teller experience being a requirement to examine for the position, and discusses her educational credentials. Doc. #56-1 at 4-5 (¶¶ 8, 10).

While the civil service process for filling the Collections Service Representative position was taking place, the Tax Office needed to obtain a temporary employee to handle the duties of the position, and Kaiser Whitney Staffing provided Malissa Eden as a temporary employee.[9]

In December 2015, Callahan and other applicants took the civil service exam for the Collections Service Representative position, and Callahan received a score of 100, which placed her in a tie for first, along with six other individuals who also achieved a score of 100.[10] New Haven's civil service rules use the "Rule of Three" that provides that "[a]ll candidates in ranks one (1), two (2) and three (3) will be the first group to be referred to the hiring department for an interview."[11]

In January 2016, the Civil Service Board certified its eligible list roster for the position.[12] There were seven individuals who were in rank one with a score of 100, four individuals in rank two with a score of 99, and two individuals in rank three with a score of 98.[13] Because the names of the individuals in each rank are listed alphabetically, Callahan's name is the first listed in rank one.[14] Each of the eligible candidates received a letter from Marcano stating the rank they were in and noting "that in some instances, a hiring decision is reached before all individuals that have been referred have had an opportunity for an interview."[15]

---

[9] Doc. #45 at 3 (¶¶ 12-13). Callahan denies the statements related to Eden and states that Eden worked at Roberto Clemente K-8 in a New Haven Board of Education position, and that she was transferred from that position to the Collections Service Representative position in October 2017. Doc. #56-1 at 6-7 (¶¶ 12-13). However, Callahan does not provide non-conclusory admissible evidence supporting this assertion, and in other places she concedes that Eden was hired as a temporary employee in the Tax Office. See id. at 8-9, 11 (¶¶ 23, 28).
[10] Doc. #45 at 3-4 (¶¶ 14, 19); Doc. #56-1 at 7-8 (¶¶ 14, 19).
[11] Doc. #45 at 3-4 (¶ 15); Doc. #56-1 at 7 (¶ 15).
[12] Doc. #45 at 4 (¶ 16); Doc. #56-1 at 7 (¶ 16).
[13] Doc. #45 at 4 (¶ 17).
[14] Ibid. (¶ 20). Although Callahan denies or does not respond to several facts related to the eligibility list, see Doc. #56-1 at 7-8 (¶¶ 17, 20), the facts in defendants' statement are clearly correct according to the eligible list roster. See Doc. #45 at 16 (Ex. B); Doc. #23-1 at 2.
[15] Doc. #45 at 5 (¶ 25).

Villani was directly involved in the hiring decision for the position because the person hired would report to her, while Librandi and Marcano were not directly involved.[16] Marcano's only involvement in the hiring for the position was responding to a question from Villani, which Librandi was aware of, by stating that Villani did not have to interview all 13 referred candidates for the position.[17] While interviewing all eligible applicants is a best practice, it can be challenging when there are many applicants and it is not required by the civil service rules.[18]

Villani and Carfora reviewed the applications of the 13 candidates and chose to interview four individuals they believed possessed the qualifications for the position, which according to Villani was someone "with a customer service background and who was comfortable handling large sums of cash."[19] To the best of Villani's recollection, each of the applicants interviewed were either Latino or African American.[20] Villani herself is not Latino or African American.[21]

After consulting with Carfora, Villani decided to hire Eden, who was in rank two for the position after receiving a score of 99 on the civil service test, is a Latino female, had previous experience as a teller in a bank and customer service experience, and had been a temporary employee in the Tax Office.[22] Villani attests that neither race, ethnicity, gender, religion, nor age played any part in hiring Eden.[23] Callahan's conclusory response states "[r]ace, color, creed, and

---

[16] *Ibid.* (¶¶ 21-22).
[17] *Id.* at 5-6 (¶¶ 23, 28).
[18] *Ibid.* (¶¶ 24, 29). Callahan does not admit or deny these facts, but states without support that defendants have not shown there was an operational need or emergency in filling the position on a temporary basis and that Eden was a Board of Education employee until October 2017. Doc. #56-1 at 9-12 (¶¶ 23-24, 28-29).
[19] Doc. #45 at 6 (¶¶ 30-31). Callahan denies these facts because she states that defendants "disregarded [her] application, college degree, skill and 100% test score," and that Villani "is supposed to have limited discretion during the interviewing and hiring practices." Doc. #56-1 at 12 (¶¶ 30-31).
[20] Doc. #45 at 6 (¶ 32). Callahan denies this fact by stating without support that to the best of Callahan's recollection, Villani did not interview any rank one candidates. Doc. #56-1 at 12 (¶ 32).
[21] Doc. #45 at 7 (¶ 33); Doc. #56-1 at 12 (¶ 33).
[22] Doc. #45 at 7 (¶¶ 34-36). Callahan denies that Carfora was consulted because she did not complete an affidavit, and otherwise responds to these facts by stating that Eden is a Hispanic female, that temporary appointment may only be made in certain circumstances by the personnel director, and that a cashier in a bank setting is titled a teller. Doc. #56-1 at 13 (¶¶ 34-36).
[23] Doc. #45 at 7 (¶ 37).

retaliation played an entire role in the decision to overlook [her] Rank 1 status deeming she was eligible to interview" for the position.[24]

At the time of hiring for the Collections Service Representative position, Villani, Librandi, and Marcano aver that they did not know Callahan, nor did they know of her relationship to any former or current employee of the City of New Haven or the New Haven Board of Education.[25] Callahan responds that her application "explains in detail the demographics about the Rank 1 test candidate," and that the application also asked whether she had ever been employed within City departments including the Board of Education.[26]

The New Haven Board of Education and City of New Haven have separate human resources departments, which operate independently at different locations.[27]

Callahan also filed a statement of additional material facts.[28] Callahan reiterates that Eden was not properly hired as a temporary employee pursuant to the civil service rules and that she remained at the Board of Education until October 2017.[29] She states that it "may not have been proper" for Villani to be involved in revising the job description for the position "because of the limited discretion an appointing authority should have regarding employment. She could have tailored the job description, and that would be considered broad discretion."[30] Callahan also

---

[24] Doc. #56-1 at 13 (¶ 37).
[25] Doc. #45 at 7-8 (¶¶ 38-42).
[26] Doc. #56-1 at 13-14 (¶¶ 38-42).
[27] Doc. #45 at 8 (¶ 43). Callahan responds that they do so "if and when it is convenient," but she does not cite to admissible evidence that supports her response. Doc. #56-1 at 14 (¶ 43).
[28] Doc. #56-2. Callahan's additional filings also contain considerable information that appears to be unrelated to this case, including statements that she has no felony convictions on her record, that she has been harassed and retaliated against by the New Haven Police Department, and voluminous exhibits that appear to be related to her past interactions with the police and related judicial proceedings. Doc. #56-1 at 6 (¶¶ 20-21); Doc. #56-4; Doc. #56-5.
[29] Doc. #56-2 at 1-4 (¶¶ 2-4).
[30] *Id*. at 4-5 (¶ 7).

5

discusses her past employment as a paraprofessional for the New Haven Board of Education, and she attaches personnel files and medical records that appear to be related to that position.[31]

Callahan filed this lawsuit in March 2018, initially against the City of New Haven Department of Human Resources and City of New Haven Civil Service Board.[32] In March 2019, I granted those defendants' motion to dismiss because sub-entities within a municipal government cannot generally be sued in Connecticut.[33]

In April 2019, Callahan amended her complaint and named five new defendants in this lawsuit.[34] She asserts claims for disparate treatment on the basis of race and sex under Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, *et seq.*; disparate treatment on the basis of marital status and age under CFEPA; racial discrimination under 42 U.S.C. § 1981; and retaliation under Title VII, CFEPA, and 42 U.S.C. § 1981.[35] Defendants now move for summary judgment on Callahan's claims in their entirety. I heard oral argument on December 17, 2020, and this ruling now follows.

---

[31] *Id*. at 5-6 (¶¶ 8, 11, 13-18); Doc. #56-3 at 6-31.
[32] Doc. #1.
[33] *See* Doc. #22; *Callahan v. City of New Haven Dep't of Human Res.*, 2019 WL 1052181 (D. Conn. 2019).
[34] Doc. #23.
[35] *Id*. at 1. Although Callahan's opposition also discusses EEOC proceedings related to her unsuccessful application for the Collections Service Representative position in 2019, *see* Doc. #56-2 at 8-11 (¶¶ 25-37), Callahan confirmed at oral argument that her claims in this case only relate to the hiring process that involved the December 2015 civil service exam. Callahan's 2019 application is the basis for a separate lawsuit. *See Callahan v. Human Resources et al*, No. 3:20-cv-01881-JAM (D. Conn. 2020). Additionally, Callahan's opposition brief asserts that "the defendants' conduct violates the charter's provision prohibiting race-based discrimination in interviewing and hiring practices, and the plaintiff's federal constitutional right to due process and equal protection under 42 U.S.C. § 1983." Doc. #56 at 2; *see also id*. at 25-29. But Callahan's amended complaint does not include these claims. *See* Doc. #23. It is improper for a plaintiff, even when proceeding *pro se*, to raise a claim for the first time in opposition to summary judgment. *See Mosby v. Bd. of Educ. of the City of Norwalk*, 2017 WL 4368610, at *8 (D. Conn. 2017), *aff'd*, 754 F. App'x 34 (2d Cir. 2018). Moreover, it is unclear that Callahan even intends to assert those claims now because the first paragraph of Callahan's brief is copied nearly verbatim from the first paragraph of the Connecticut Supreme Court's decision in *Kelly v. City of New Haven*, 275 Conn. 580 (2005), and the other excerpts related to due process and equal protection are copied from websites and lack any particularized allegations to Callahan's circumstances. Accordingly, I consider those claims abandoned and do not discuss them further.

**DISCUSSION**

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. The Court's role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).

*Discrimination claims*

Callahan claims that defendants discriminated against her on the basis of race in violation of section 1981, Title VII, and CFEPA; on the basis of sex in violation of Title VII and CFEPA; and on the basis of marital status and age in violation of CFEPA.[36] All of these claims are analyzed under the familiar *McDonnell-Douglas* three-part burden shifting standard. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (Title VII); *Khanna v. MUFG Union Bank, N.A.*, 785 F. App'x 15 (2d Cir. 2019) (section 1981); *Craine v. Trinity Coll.*, 259 Conn. 625, 637 (2002) (CFEPA).

First, Callahan must show the following facts to establish a *prima facie* case: (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that the circumstances of the adverse action give

---

[36] Doc. #23 at 1.

rise to an inference of discrimination. *See, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). A plaintiff's burden to state a *prima facie* case is "not onerous" and has been frequently described as "minimal." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016).[37] Although defendants argue that Callahan was not hired in circumstances that could even give rise to an inference of discrimination, because Callahan is undoubtedly a member of various protected classes and suffered an adverse employment action, I will assume for the purposes of this ruling that Callahan has made a *prima facie* case of discrimination and proceed to the next stages of the *McDonnell-Douglas* analysis.[38]

At the second stage of the *McDonnell-Douglas* analysis the burden shifts to the defendants to articulate a legitimate, non-discriminatory basis for the adverse action. *See Walsh*, 828 F.3d at 75. Defendants have done so here. Defendants have offered evidence that they did not interview or hire Callahan because she was one of 13 candidates who was eligible for the position based on the civil service exam, including one of seven who ranked "first" on the exam. Defendants interviewed a subset of those candidates whose applications appeared well-suited to the position description and had customer service experience—which was listed as a requirement on the job description—and hired one of those candidates, who had also been staffed to the office on a temporary basis. This was a valid employment action under New Haven's civil service rules, which do not require that a hiring department interview all candidates who are certified as eligible for a position, let alone hire them all. Callahan argues that this was not a valid, non-discriminatory employment action, but does not offer admissible evidence to create a genuine issue of material fact that it was not.

---

[37] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[38] *See* Doc. #46 at 10.

For the third stage of the analysis, the burden shifts back to Callahan to prove that the defendants' justification was in fact a pretext for discrimination. *See Vega*, 801 F.3d at 83. In showing pretext, "a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus." *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156-57 (2d Cir. 2010). The Second Circuit has explained that at this stage, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Walsh*, 828 F.3d at 75.

Callahan has not met her burden. There is no admissible evidence in the record to support Callahan's conclusory assertions that the justifications for not interviewing or hiring Callahan were a pretext and that those decisions were motivated by any form of discrimination.[39] To start, Callahan presents no admissible evidence to undermine defendants' evidence that they did not know Callahan when they declined to interview her and hired Eden. The fact that Callahan was not interviewed does not itself suggest that defendants discriminated against her, especially in light of defendants' evidence that eight other eligible candidates also did not receive interviews, and that each of the candidates interviewed, to the best of Villani's recollection, was also African American or Latino and therefore also were members of at least one protected class.

Callahan emphasizes that there is at least one material fact in dispute about whether Eden was actually a temporary employee in 2015 or 2016. Specifically, Callahan suggests that Eden did not transfer to the position until October 2017, and that defendants have willfully withheld pertinent information related to Eden.[40] But Callahan does not provide any admissible evidence to support her claim about Eden's employment status or to rebut Villani's sworn affidavit stating

---

[39] *See* Doc. #56 at 4.
[40] *Id*. at 8; Doc. #56-1 at 6-7 (¶¶ 12-13); Doc. #56-2 at 1-2, 11 (¶¶ 2, 40-41).

that Eden was hired as a temporary employee while the civil service hiring process was ongoing. Nor does Callahan explain how a delay in the Tax Office's hiring of Eden would make it more likely that defendants based their hiring decision on impermissible factors, especially because Callahan was not among the top four applicants that Villani and Carfora chose to interview.

Callahan also argues that the City of New Haven's civil service rules that round applicants' scores so that ties are created before using the "Rule of Three" are unlawful and discriminatory, citing *Kelly v. City of New Haven*, 275 Conn. 580 (2005).[41] But *Kelly* only held that New Haven's civil service rules at that time allowed hiring officials too much discretion in violation of the charter's civil service provisions, and noted "we limit our conclusion to the facts at bar." *Id.* at 623. *Kelly* did not hold that New Haven's implementation of its civil service rules and the Rule of Three alone creates an inference of discrimination based on impermissible factors. *See id*. at 591 & n.12.

Callahan asserts that defendants engaged in a discriminatory practice by making changes to job descriptions without communicating them.[42] But she does not offer admissible evidence to suggest that any changes to the position's description were made as a pretext to not interview or hire her or to otherwise engage in discrimination; nor does she point to evidence that tends to negate defendants' evidence that the changes to the position's description were made prior to the job application being posted publicly.

In sum, Callahan does not cite any admissible evidence to suggest pretext or discriminatory motive in her opposition memorandum or Local Rule 56(a)(2) statement. Nor do the submissions attached to her briefing appear to contain any evidence of discrimination on the basis of race, sex, age, or marital status in her employment application.

---

[41] Doc. #56 at 1-2, 18.
[42] *Id*. at 10.

Accordingly, the summary judgment record does not contain evidence that would allow a reasonable jury to conclude that the defendants' reasons for not interviewing or hiring Callahan were in fact a pretext for discrimination on the basis of race, sex, age, or marital status. I will therefore grant summary judgment to defendants on Callahan's discrimination claims under Title VII, section 1981, and CFEPA.

### *Retaliation claims*

Callahan also argues that defendants retaliated against her because of her race, sex, age, national origin, and repeated complaints about discrimination in the past, including "for opposing discriminatory practices against [her] mother."[43] Claims for retaliation under Title VII are analyzed at the summary judgment stage under the *McDonnell-Douglas* framework, as are similar claims under section 1981 and CFEPA. *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (section 1981); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (Title VII); *Polk v. Sherwin-Williams Co.*, 2019 WL 1403395, at *8 (D. Conn. 2019) (CFEPA). First, a plaintiff must present evidence sufficient to permit a rational trier of fact to find (1) that she engaged in protected activity under the relevant law—*i.e.*, that she complained of or otherwise opposed some form of discrimination that the relevant legal regime forbids; (2) that the employer was aware of this activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action. *See Zann Kwan*, 737 F.3d at 844. If the plaintiff meets this burden and the defendant then points to evidence of a legitimate, non-retaliatory reason for the challenged employment decision, the plaintiff must point to evidence that would be sufficient to permit a rational

---

[43] Doc. #23 at 1-2, 8 (¶¶ 36-37).

factfinder to conclude that the employer's explanation is incomplete or merely a pretext for impermissible retaliation. *Id.* at 845.

The record does not support a *prima facie* case of retaliation. There is no basis on the record to conclude that defendants were aware of any protected conduct Callahan or her mother may have engaged in, let alone that they did not interview or hire Callahan because of that protected activity. Callahan does not specify what protected activity, exactly, she engaged in, and she does not provide non-conclusory support for her retaliation claims in her opposition, except for statements that appear to be quoting filings in other cases.[44] Even assuming Callahan engaged in some protected activity, she does not rebut defendants' evidence that the defendants did not know who Callahan was and did not know of her prior employment issues with the Board of Education or her mother's past employment issues with the City. Nor does she refute that the City of New Haven and the Board of Education have separate human resources departments. Callahan states that she put her demographic information in "MUNIS" and disclosed on her application that she had been employed within City departments including the Board of Education.[45] But that does not suggest the defendants had personal knowledge of Callahan, or that they knew of her or her mother's employment histories. Nor does it suggest a causal connection between this information and the decision not to interview or hire her.

Even if Callahan were able to make a *prima facie* case of retaliation, she would still need to show that defendants' reasons for not interviewing or hiring her were pretextual. The same evidence supporting defendants' claimed rationale for not interviewing or hiring Callahan applies here as to her claims for discrimination. And just as Callahan has not provided further evidence suggesting that this rationale was false in the context of discrimination, she similarly

---

[44] *See* Doc. #56 at 6.
[45] Doc. #56-1 at 13-14 (¶¶ 38-42).

has not done so in the context of retaliation. Accordingly, I conclude that a reasonable jury could not find that defendants illegally retaliated against Callahan, and so I will grant summary judgment to defendants on Callahan's retaliation claims.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (Doc. #44) is GRANTED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 1st day of June 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge